# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| MICHAEL ANTHONY GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:12-CV-81 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Michael Anthony Gray ("Gray") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. §§ 1614(a)(3)(A); 1381-1383f. Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully considered the administrative record, the legal memoranda, the arguments of counsel, and the applicable law, and conclude that evidence submitted after the ALJ's decision is new, material and should be considered by the ALJ. As such, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 11), **GRANTING IN PART** Gray's Motion for Summary Judgment (Dkt. No. 17), and reversing and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## **STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Gray bears the burden of proving that he suffers under a "disability" as that term is interpreted under the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Gray was born on December 10, 1964, (Administrative Record, hereinafter "R." 27). Gray's date last insured is June 30, 2008, thus Gray must show that his disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). Gray has an eighth grade education (R. 27), and his past relevant work experience includes manual labor, operating a sander in a furniture plant, driving a dump truck and working as a roofing helper for a home

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

improvement firm, and operating a mower on the interstate highway for a contractor. R. 28-30. The ALJ found that Gray has not engaged in substantial gainful activity since his alleged disability onset date of September 30, 2005. R. 355.

## **Claim History**

This is not the first time that Gray's claim has been remanded to the Commissioner. Gray initially filed an application for DIB on November 8, 2006, claiming that his disability began on September 30, 2005, due to degenerative disc disease, degenerative joint disease, foot pain, chronic knee pain, anxiety, and arthritis in his hands. R. 108. The state agency denied Gray's application at the initial and reconsideration levels of administrative review. R. 55, 61. On July 30, 2008, Administrative Law Judge ("ALJ") Steven A. De Monbreum held a hearing, at which Gray was represented by counsel. R. 24- 52. On October 16, 2008, the ALJ entered his decision denying Gray's claim for DIB. R. 10. Gray appealed this decision to the Appeals Council, and submitted additional records from his treating physician, James M. Lovelace, M.D. The Appeals Council denied the claim on reconsideration. R. 1. Gray appealed the decision to this court, and on October 7, 2010, then Magistrate Judge Michael F. Urbanski (now the presiding district judge for this matter) issued an opinion and order remanding the case to the Appeals Council, and directing that the Commissioner obtain a consultative examination of Gray by a back specialist. R. 328-41.

In his opinion, Judge Urbanski noted that Gray's two treating sources, Dr. Lovelace and Dr. Holly Welty-Miller, both found that Gray's low back pain prevented him from performing any work. R. 334-35. Judge Urbanski noted that the ALJ rejected these opinions, and instead relied upon two state agency physicians, who performed their reviews without the benefit of

4

Gray's most recent treatment records and the disability opinion of Dr. Lovelace. R. 337. Judge Urbanski further noted that the ALJ's decision to reject the treating source opinions appeared to be grounded in the ALJ's own clinical conjecture rather than the evidence of record. R. 339.

Judge Urbanski also found that the ALJ's assessment that Gray had no signs of muscle spasms or "adverse neurologic signs" was not entirely consistent with the evidence of record, as it ignored the moderate to severe muscle spasms mentioned in virtually all of Gray's chiropractic treatment records, and Dr. Lovelace's consistent positive straight leg raising findings. R. 338. Ultimately, Judge Urbanski remanded the case for "further administrative development, including consideration of the information presented to the Appeals Council, along with a consultative examination of Gray by a back specialist such an orthopedic surgeon or neurosurgeon."[2] R. 341.

On November 1, 2010, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ for proceedings consistent with Judge Urbanski's Order. R. 342-43. The Appeals Council also combined Gray's first claim with a subsequent claim he filed on July 22, 2009; finding that the two claims were now duplicates. R. 344-45. ALJ De Monbreum held a second administrative hearing on June 2, 2011 (R. 396), and issued a decision on July 29, 2011, again denying Gray's DIB claim. R. 352.

In the July 29, 2011 decision, the ALJ noted that he was directed by the Appeals Council (pursuant to Judge Urbanski's order) to obtain a consultative examination of Gray by a back specialist. The ALJ explained, however, that he found such an examination "problematic" because Gray's date last insured was three years earlier, and the state agency is limited as to what physicians it can use. The ALJ instead elected to obtain testimony from Ward Stevens, M.D., as

---

[2] The opinion of Judge Urbanski is part of the record at pages 329-341 and can also be found on Westlaw at Gray v. Astrue, No. 7:09cv282, 2010 WL 3949746 (W.D. Va. Oct. 7, 2010).

a reviewing physician, who testified at the administrative hearing and concluded that Gray is capable of light work. R. 405.

Gray obtained a consultative examination from orthopedic surgeon Robert B. Stephenson, M.D. dated June 9, 2011, which supported a finding of disability. R. 346-48. A questionnaire completed by Dr. Stephenson was submitted to the ALJ prior to his July 29, 2011 decision. However, for unknown reasons, Dr. Stephenson's supporting report was not submitted to the ALJ. Gray submitted Dr. Stephenson's full report to the Appeals Council, who again denied his claim on reconsideration. R. 300. This appeal followed.

## **ANALYSIS**

Gray argues that: 1) the ALJ erred by failing to comply with the remand orders of Judge Urbanski and the Appeals Council to obtain a consultative report from a back specialist; 2) the ALJ erred by giving the testimony of a non-examining physician (Dr. Stevens) greater weight than the opinions of Gray's treating physicians; and, 3) Dr. Stephenson's report, submitted after the second hearing, is new, material evidence that warrants remand of the case to the Commissioner under sentence four of 42 U.S.C. § 405(g).[3] After careful review of the record as a whole, I agree with Gray that Dr. Stephenson's opinion is new, material, and relevant, and thus,

---

[3] Gray also asserts that, if this case is remanded, it must be sent to a new ALJ pursuant to the Social Security Administration's Hearings, Appeals and Litigation Law Manual (hereinafter "HALLEX"), which "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Action levels." HALLEX § I-1-0-1. See http://www.socialsecurity.gov/OP_Home/ hallex/I-02/I-2-1-55.html. Gray correctly notes that HALLEX § I-2-1-55 states that an Appeals Council remand should be assigned to the ALJ who issued the decision or dismissal unless "the case was previously assigned to that ALJ on a prior remand from the Appeals Council and the ALJ's decision or dismissal after remand is the subject of the new Appeals Council remand…" Gray is simply noting the administrative procedural provisions; thus, there is no legal issue or decision necessary from the court on this point.

it is appropriate to remand this case to the Commissioner under sentence four of 42 U.S.C. § 405(g ), to consider Dr. Stephenson's opinion.

The record contains conflicting medical opinions with regard to Gray's functional capacity.[4] On January 8, 2007, state agency physician Frank M. Johnson, M.D. completed a residual functional capacity assessment and found Gray capable of light work, with limited pushing and pulling with his legs. R. 225. State agency physician Michael Harman, M.D. agreed on April 26, 2007. R. 246.

On July 15, 2008, Gray's treating orthopedic specialist, Dr. Lovelace, completed an evaluation of Gray's functional capacity. R. 282-83. Dr. Lovelace concluded that Gray could stand and walk for about two hours, sit for about four hours, frequently lift ten pounds, and occasionally lift twenty pounds. Dr. Lovelace stated that he believed that Gray's pain would often interfere with his attention and concentration; that he would have good days and bad days, and would miss more than three days of work per month. R. 282-83. On February 2, 2009, Dr. Lovelace wrote a narrative letter consistent with the conclusions in his earlier functional capacity form, stating,

> Mr. Gray's complaints are pain during the day with activity and with activities of daily living. His symptoms correlate with findings on physical examination as well on radiographic studies. He has localized pain to his lower back area on examination as well as evidence of nerve irritation based on provocative physical exam testing.

R. 284.

On December 29, 2008, Gray's treating chiropractor, Dr. Welty-Miller, wrote a letter stating her opinion that Gray is unable to withstand an eight-hour day, forty-hour a week heavy, moderate, light or stationary work load. Dr. Welty-Miller found that Gray is unable to sit for

---

[4] The medical evidence in this matter was previously reviewed in detail in Judge Urbanski's October 7, 2010 opinion; thus, I will simply summarize the medical opinion evidence here.

more than one hour at a time, or stand for more than thirty minutes at a time; that he suffers from moderate to severe pain on a daily basis; and that he is unable to sleep more than a few hours at a time, due to pain.[5] R. 287. On June 1, 2011, Dr. Lovelace completed another RFC form, re-stating the restrictions set forth in his July 15, 2008 report. R. 577.

As noted above, rather than obtain a consultative report as directed by Judge Urbanski and the Appeals Council, the ALJ elected to have neurosurgeon Dr. Ward Stevens testify as a reviewing physician at the administrative hearing on June 2, 2011. Dr. Stevens testified that Gray can lift and carry ten pounds frequently and twenty pounds occasionally. R. 412. He stated that Gray can stand and walk six hours in an eight hour day, and sit six hours in an eight hour day. R. 412. Dr. Stevens further found that Gray can occasionally balance, crouch, crawl, stoop, bend, climb ramps and stairs, and never climb ladders, ropes or scaffolds.[6] R. 414.

As ordered by Judge Urbanski and the Appeals Council, Dr. Stephenson, an orthopedic surgeon, completed a consultative examination of Gray on June 9, 2011. Dr. Stephenson's impression was that Gray suffered from chronic low back pain related to underlying lumbar degenerative disc disease with local disc protrusion at L5-S1 along with chronic muscular low-back strain without evidence of radiculopathy. R. 348. Dr. Stephenson found that Gray is limited to standing and walking two hours per day, and sitting four hours per day. Dr. Stephenson limited Gray's lifting and carrying activities to ten to twenty pounds on an occasional basis. He

---

[5] Although chiropractors are not technically "acceptable medical sources," evidence from such sources may be used to show the severity of an individual's impairment and how it affects the individual's ability to function. Social Security Ruling 06-03p.

[6] Dr. Stevens also found that Gray was limited to occasional overhead reaching. When the ALJ asked Dr. Stevens for the basis in the record for that restriction, Dr. Stevens stated that it is his "personal opinion" that it is hard to work over your head continuously. Dr. Stevens then stated, "go ahead and tell him he can do it frequently...I'm just going on myself." R. 412.

found that Gray can only occasionally bend, stoop, crouch; and should avoid climbing ladders, repetitive stair climbing and unprotected heights. R. 348.

In his July 29, 2011 decision, the ALJ gave great weight to Dr. Stevens's opinion, gave little weight to Drs. Lovelace and Welty-Miller's opinions, and found Gray capable of a range of light work. R. 359. As stated above, the only report from Dr. Stephenson in the record before the ALJ was a checklist questionnaire dated June 16, 2011, in which Dr. Stephenson agreed that the limitations set forth in his June 9, 2011 report relate back to May 2, 2006. R. 579. Dr. Stephenson's June 9, 2011 report itself was not in the record. Dr. Stephenson's report was submitted to the Appeals Council, which made the evidence a part of the record, but found that it provided "no reason under [the] rules to assume jurisdiction." R. 300.

When deciding whether to grant review, the Appeals Council must consider evidence submitted to it, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Id. Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

When the Appeals Council denied Gray's second request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991.) "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005)(citing Smith v. Chater,

9

99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 Fed. Appx. 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001)(unpublished opinion)); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013).

In this case, I find that Dr. Stephenson's report is "new" evidence, as it was a consultative opinion obtained pursuant to Judge Urbanski's order remanding the case, and has not been reviewed by any fact-finder. Dr. Stephenson's report is also relevant, as he explicitly relates his RFC report back to May 2, 2006, the relevant time period at issue in this case.[7]

---

[7] I find no merit in the Commissioner's argument that Dr. Stephenson's report is not probative because it was provided three years after Gray's date last insured. The Fourth Circuit has held that medical evaluations made subsequent to the expiration of a claimant's insured status may be relevant to prove a previous disability. Wooldridge v. Bowen, 816 F.2d 157, 160 (W.D. Va.

I also find that Dr. Stephenson's report presents material competing testimony that has not been considered by a fact-finder in the case; and thus, there is a reasonable possibility that it may change the outcome of the ALJ's decision. Dr. Stephenson's opinion supports the RFCs provided by Gray's treating back specialist and chiropractor, and is more restrictive than the opinions of the reviewing physicians in this case. Considering Dr. Stephenson's report, all treating and consulting physicians support a finding of disability, while all reviewing physicians conclude that Gray is capable of employment.[8]

At this time, no fact finder has considered Dr. Stephenson's opinion. As stated above, assessing the probative value of competing evidence is quintessentially the role of the fact finder. Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011). In Meyer, the Court remanded the case to the Commissioner with instructions that the ALJ consider new evidence from plaintiff's treating physician, stating,

> [o]n consideration of the record as a whole, we simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here….no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder….Therefore, we must remand the case for further fact finding.

662 F.3d 700, 707 (4th Cir. 2011).

Similarly in this case, Judge Urbanski ordered the Commissioner to obtain a consultative report by a back specialist in order to complete the record. A consultative report was obtained from an orthopedic surgeon which imposed such limitations that, if given weight, support a

---

1987). I further note that the specialist upon whose opinion the ALJ relies in rejecting Gray's claim also reviewed the evidence for the first time over three years after the date last insured.
[8] Notably, Judge Urbanski specifically ordered the Commissioner to obtain a consultative opinion on remand, not an additional reviewing opinion.

11

finding of disability. And yet, this report has not been reviewed, considered or weighed by any fact finder in the case.

The Commissioner argues that there is substantial evidence in the record to support the ALJ's conclusion that Gray is not disabled, and thus, his opinion should be affirmed. If that were the appropriate inquiry at this juncture, the Commissioner may be correct. However, the question before me is whether Dr. Stephenson's report presents a conflict in the evidence such that there is a reasonable possibility that it would have changed the ALJ's decision. It is possible that, when the record is viewed in its entirety, there is substantial evidence to support a decision that Gray is not disabled. However, it is also reasonably possible that the opinion of a consulting specialist that Judge Urbanski found necessary to fully develop the record, that conflicts with the opinions relied upon by the ALJ, and which indeed supports a finding of disability, would change the ALJ's decision.[9]

**RECOMMENDED DISPOSITION**

For the reasons set forth above, it is recommended that the defendant's motion for summary judgment be **DENIED**, Gray's motion for summary judgment be **GRANTED IN PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and

---

[9] As noted above, Gray also argues that the ALJ erred by not following the Appeals Council's mandate to obtain a consultative opinion, and by giving greater weight to the opinion of a non-examining physician than a treating physician. Having concluded that the case must be remanded for consideration of Dr. Stephenson's opinion, I do not need to address whether it was reversible error for the ALJ not to obtain a consultative evaluation in this case. Likewise, on remand, the ALJ must re-weigh all of the medical opinions in the record and will undoubtedly do so as required by the regulations.

Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

    Entered: July 24, 2013

    /s/ Robert S. Ballou

    Robert S. Ballou
    United States Magistrate Judge